THE CITY OF CHICAGO

*v.*

MINNIE HERZ.

NEGLIGENCE — *in leaving a sidewalk unsafe.* Where city authorities suffered a sidewalk upon a frequented street, built some four feet above the ground, to become dilapidated and out of repair for a considerable time, and the stringers upon which the boards were nailed were rotten, so as not to hold the nails, and the boards loose, making the walk dangerous, and they, after notice of its unsafe condition, did not repair the same, so as to make it safe, and the plaintiff, while passing over the same with her child in her arms, stepped upon a short board, which gave way, causing her to fall upon her back, whereby she received an irreparable injury, and no want of prudence being attributable to her, it was *held*, that her right of recovery against the city, for the injury, was clear.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. RICHARD S. TUTHILL, for the appellant.

Mr. T. A. MORAN, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

In passing over a sidewalk on Wabash avenue, which had been constructed above the level of the street, a plank on which plaintiff stepped gave way, which caused her to fall with one foot in the hole and the other on the walk, and in an effort to save her child, which she was carrying in her arms, she fell backwards, sustaining a severe injury of the spine. One of the physicians, describing her condition, says, "she was paralyzed in her lower extremities, caused by a fracture of the *vertebræ.*" She suffered intense pain from the injury. It was not until after six months that she could be carried even on pillows. She can not yet stand on her feet, and, according to the testimony of the surgeons who attended her, she will never be able to stand up or walk. Plaintiff is twenty-four years of age, and, previous to the injury, had always been a healthy person. She has now no sense of feeling in her lower limbs, and can only sit up for brief periods, in an easy chair, supported with pillows.

The cause was submitted to a jury, on instructions expressing the law applicable to the case, so fairly that counsel for defendant has taken no exceptions. No question of law is raised, nor were there any exceptions taken to the rulings of the court in the admission or rejection of evidence, or in giving or refusing instructions; nor is there even a suggestion the damages found are excessive.

But a single question is made, viz: the verdict is against the weight of the evidence. As a sufficient answer to the point made, we might content ourselves with making reference to the rule so well established in this court, that where the evidence is conflicting, and there is evidence to sustain the verdict, as there is in this case, and the cause has been submitted on instructions presenting fully the law applicable to the

facts, to which no exceptions have been, or can be, taken, the verdict must stand.   Otherwise, it would deprive a party of the right of trial by jury—a right secured by law.

There is no necessity, however, for placing the affirmance of the judgment on any technical grounds.   The merits of the case are with plaintiff.   She has sustained irreparable injury, through the gross carelessness of the officers of the city, whose duty it was to keep streets and sidewalks in repair, and she ought to recover, were it possible, a sum commensurate with the damages suffered.

The sidewalk where the accident happened was on Wabash avenue, near Twentieth street, which, we understand, is one of the great thoroughfares of the city.   It was a wooden structure, ten feet wide, and stood four or five feet above the level of the street, on one side, on stilts, or posts, with stringers one way and boards the other.   A witness, whose wife owned the adjoining property, testified the walk was there when they got it four years ago; that he had "nailed down a plank now and then,—perhaps ten times,"—and that he had "discovered the stringers were rotten, by driving in nails, perhaps a year" before.

It is not claimed plaintiff did not observe due care for her personal safety.   She had never been over that walk before. It was about eight o'clock in the evening of June 16, 1874. There was nothing to apprise her of the danger she was approaching.   She saw nothing to give her the least cause to apprehend danger until the instant she fell.

All the witnesses concur the walk had been in bad condition in the previous April.   It was then repaired, but not very securely.   The party employed to make the repairs sent a man to do it.   Afterwards he examined it, and, in his testimony, he gave it as his opinion it was safe for a "reasonable time."   When asked what he considered a "reasonable time," his reply was, "two days."   It is not probable the witness expected his answer would be understood literally, but it shows he had but little confidence in the work done,—that it would

endure for any considerable length of time. It is certain it was in such bad condition, between the 1st and 16th of June, when plaintiff was injured, that a policeman, whose beat required him to pass over it, twice reported the dangerous condition of the sidewalk at that point to the city officers. It was unsteady by reason of the decay in the timbers, the planks were actually rotten in some places, and an oscillating movement could be distinctly felt by any one passing over it. The policeman had stumbled on it, and the proof is, others had fallen there. He reported it dangerous because, he says, it was "shaky."

As we understand it, the policeman's last report of the unsafe condition of the sidewalk at this point was made only two days before the accident to plaintiff. He says, however, it had been repaired before the accident, but who repaired it, or whether the city officers paid the slightest attention to it, is not shown by any evidence. The policeman did not know who fixed it, and certainly if any one in the employ of the city had done it, he would have been produced as a witness to show it had been well and securely done. The board that gave way under plaintiff was a short one, and one end of it rested, perhaps, on the middle stringer. On Sunday previous to the accident, the policeman stepped on it, and it went down. He took it out and laid it across the hole. After his report, made on the next morning, it was repaired by laying back the same "old board" and tacking it with a nail to the stringer. That, we apprehend, was the real cause of the accident to plaintiff. What was done, gave the walk the appearance of being safe, when it was most dangerous. Had the hole been left open, there would have been something to apprise plaintiff of the danger she was approaching. As it was, there was nothing that would indicate to the most careful person the unsafe condition of the walk over which she was about to pass. The board was rotten, and the stringer to which the end was nailed for support was also rotten. Of course, it

could bear no considerable weight, and when plaintiff stepped on it, it gave way.

If the city caused the repairs to be made, after notice from the policeman, the manner of doing it was, simply, to create a snare to persons having occasion to pass over it, far more dangerous than if the hole had been left open. As it was, there was a deceptive appearance of security; but if the municipal officers gave the matter no attention, and what was done, was done by some one passing, it was a culpable, if not criminal, omission of duty. In either case, defendant was guilty of gross negligence, and this verdict must stand.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CRAIG: I do not concur with a majority of the court in the decision of this cause. Appellee recovered a judgment of $7500, which, if it be conceded she was entitled to recover, is a much larger sum than the facts of the case would warrant.